UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 10-30021-RAL |
| | * | |
| Plaintiff, | * | |
| | * | OPINION AND ORDER |
| vs. | * | DENYING DEFENDANT'S |
| | * | POST-TRIAL MOTIONS |
| THOMAS WILLIAM FREDERICK, | * | |
| | * | |
| Defendant. | * | |

A jury returned a verdict on December 3, 2010, finding Defendant Thomas William Frederick

("Frederick") guilty of three of the four counts charged in the Indictment. (Doc. 262). Frederick now

has filed three post-trial motions:  1) a Motion for New Trial or Acquittal,  contending that one of

his attorneys, Mary Wynne, provided ineffective assistance of counsel during closing argument (Doc.

271); 2) a Motion for Stay of the Sentencing Pending the Court's Decision on the Motion for New

Trial (Doc. 272); and 3) a Motion from court-appointed attorney Stanley E. Whiting to withdraw as

counsel for Defendant because he might be a witness on issues concerning alleged ineffective

assistance of counsel (Doc. 273).

A collateral post-conviction action under 28 U.S.C. § 2255 typically is how a claim of

ineffective assistance of counsel is presented, so that a record sufficient to examine counsel's

performance can be created.  United States v. Villalpando, 259 F.3d 934, 938 (8th Cir. 2001).

However, this Court may consider an ineffective assistance claim on a motion for a new trial if an

adequate record already exists on the issue.  Id.; United States v. Stevens, 149 F.3d 747, 748 (8th Cir.

1998).  Here, the claim of ineffective assistance of counsel does not turn on information outside of

the district court record.  See United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005).  The

ineffective assistance of counsel claim in this case focuses strictly on the closing argument given by attorney Wynne. Because Frederick's ineffective assistance of counsel claim does not involve facts outside the record and indeed stems from a closing argument viewed by this Court, there is no reason to postpone considering the claim until an action under 28 U.S.C. § 2255.

A court considering an ineffective assistance of counsel claim must consider the "totality of the evidence." Strickland v. Washington, 466 U.S. 668, 695 (1984). Likewise, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . and must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. As set forth below, this Court has considered the "totality of the evidence" and "all the circumstances." For the reasons explained below, this Court denies each of Frederick's post-trial motions.

## I. FACTS

### A. Pretrial case developments

On March 9, 2010, Frederick was indicted on four counts:  Count I - aggravated sexual abuse of a child by engaging or attempting to engage in a sexual act involving the intentional touching, not through the clothing, of the genitalia of W.F. at a time when W.F. had not attained the age of 12; Count II - sexual contact with a minor by engaging or attempting to engage in the intentional touching, either directly or through the clothing, of the genitalia, groin, breast, inner thigh and buttocks of J.F. at a time when she had attained the age of 12 years but had not yet attained the age of 16 years; Count III - sexual abuse of a minor by causing or attempting to cause J.F. to engage in the sexual act of contact between his penis and her vulva at a time when she had not attained the age

2

of 16 years but had attained the age of 12 years; and Count IV - tampering with witness J.F. by knowingly intimidating, threatening, or corruptly persuading J.F. not to tell the truth about Frederick's alleged sexual abuse. (Doc. 1).

On March 19, 2010, attorney Stanley E. Whiting filed a notice of appearance on behalf of Frederick, after being privately retained as Frederick's counsel. (Doc. 5). Attorney Whiting is a member of this Court's panel of Criminal Justice Act ("CJA") attorneys, has been on the CJA panel for many years, is an experienced and well-respected trial attorney, and has tried multiple felony cases in federal court in South Dakota. Frederick makes no claim that attorney Whiting failed to provide effective assistance of counsel, nor does there appear to be a legitimate basis for such a claim. With attorney Whiting at his side, Frederick pled "not guilty" (Doc. 10) and has maintained that he is innocent throughout the pendency of this case. On April 6, 2010, attorney Mary T. Wynne filed a notice of appearance "as Pro Bono Co-Counsel" for Frederick. (Doc. 12). Attorney Wynne is an experienced attorney who was in private practice in South Dakota, has been a defense attorney at a jury trial of at least one felony case in federal court in South Dakota, and previously was employed as an Assistant United States Attorney in the District of South Dakota. She has served as an associate judge in the Fort McDowell Yavapai Nation tribal court in Arizona and at one time was president of the National American Indian Court Judges Association. (Doc. 99, Doc. 276-1).

Attorney Wynne is a member of the same extended family as Frederick. (Doc. 271). During the trial, evidence established that Frederick is part of a Native American tiospaye, which is an extended family unit typically living in close proximity to one another and functioning as a single supportive family unit. Attorney Wynne is part of the Frederick tiospaye, either by having been adopted by Frederick's mother or having been a foster child for a time in the home of Frederick's

3

mother. Attorney Wynne and Frederick consider themselves to be akin to siblings. The only conduct of Wynne deemed by Frederick to be ineffective assistance occurred during Wynne's closing argument. (Doc. 271).

Frederick chose Whiting and Wynne as his attorneys. Frederick is not an unsophisticated defendant. Frederick is 60 years old, has a background in law enforcement as a former police officer and game warden for the Rosebud Sioux Tribe, and has operated a family ranch business. As was stipulated by the Government and Frederick, he is an "Indian," and the alleged offenses occurred in "Indian Country."

The victims as alleged in the Indictment are W.F. and J.F., who were children adopted by Frederick's sister, Kathleen Frederick. (T. 662). Frederick thus is the uncle of W.F. and J.F. In turn, attorney Wynne was somewhat like an aunt to W.F. and J.F. before the revelation of these allegations resulted in W.F. and J.F. being placed outside of Kathleen Frederick's home.

On June 16, 2010, attorney Whiting made an ex parte motion for court appointment of counsel, advising that the $10,000 retainer paid by Frederick had been depleted and that Frederick had become indigent. (Doc. 60). Magistrate Judge Mark Moreno ultimately appointed attorney Whiting under the Criminal Justice Act as counsel for Frederick. (Doc. 107). Attorney Wynne continued as pro bono counsel for Frederick.

There is no question about the effectiveness, devotion, or zealousness of attorneys Wynne and Whiting in their representation of Frederick in pretrial proceedings. Well in excess of 200 pleadings were filed prior to the start of the jury trial. The pleadings included a serious motion to suppress, which was followed by a suppression hearing (Doc. 57, 58), and multiple other defense motions.

4

On July 7, 2010, the Government provided notice under Rules 413, 414, and 404(b) of Federal Rules of Evidence that it expected to call at trial two other alleged victims of Frederick's sexual abuse or sexual assaults - L.P. and E.S. (Doc. 77). Attorneys Whiting and Wynne filed motions to exclude such testimony (Doc. 115), filed motions seeking production of - and ultimately obtained - records regarding L.P. and E.S. (Doc. 120, 183), and succeeded in having a motion granted to keep out of evidence a contention that Frederick had sexually assaulted yet another minor. (Doc. 124, 125). The defense attorneys obtained records from the South Dakota Department of Social Services and other records on L.P. and E.S. The work of the defense attorneys led to lively cross-examination of L.P. and a decision of the Government not to call E.S. as a witness at trial. Attorneys Whiting and Wynne made and succeeded on motions to obtain expert witnesses. (Doc. 99, 103, 105, 106). Attorney Whiting made a motion for and succeeded in getting an investigator appointed for Frederick. (Doc. 172). Frederick's attorneys filed many motions in limine and provided very zealous representation of Frederick throughout the pretrial proceedings.

The zealousness, or perhaps overzealousness, of defense counsel led to this Court dealing with a flurry of motions in November, 2010. (Doc. 175, 179, 181, 182, 183, 184, 185, 186, 187, 188, 189). One of those motions - a Motion to Extend Time to File Motion to Dismiss for Lack of Federal Territorial Jurisdiction (Doc. 187) - prompted this Court to issue an order questioning for the first time whether Frederick was receiving effective assistance of counsel. The full text of this Order was:

> On November 9, 2010, Defendant filed a Motion to Extend Time to File Motion to Dismiss for Lack of Federal Territorial Jurisdiction (Doc. 187). The Motion seeks until November 19, 2010, which is the Friday before the trial begins with jury selection set for November 22, 2010. Defendant claims that the complexity of the issues requires Defendant to take until November 19, 2010, to adequately

5

prepare such a motion. What Defendant, or at least Defendant's attorney overlooks, is that such a deadline would leave the Government only one business day - November 21, 2010, the day before jury selection - to consider and evaluate whether and how to resist such a motion ostensibly involving a complex issue. Defendant also ignores that this case has been pending since March 9, 2010. If there were a legitimate basis for a motion to dismiss for lack of jurisdiction, the two well experienced defense counsel involved in representing Defendant should have filed such a motion months ago. Certainly, if there is a valid ground to assert a lack of jurisdiction, that issue must be raised. However, if there is such a valid ground, then defense counsel seemingly have provided ineffective assistance by neglecting it until the eve of trial. Therefore, it is

ORDERED that Defendant's Motion to Extend Time to File Motion to Dismiss is denied. It is further

ORDERED that if there is a legitimate ground to question federal court jurisdiction that a motion and supporting brief be filed forthwith.

(Doc. 192) (emphasis added). Ultimately there was no issue about the territorial jurisdiction of the Court in this case, with counsel for both sides stipulating to the jurisdictional requirements that the Defendant is an "Indian" and that the alleged offenses occurred in "Indian Country."

The thoroughness and zealousness (or over-zealousness) of attorneys Wynne and Whiting perhaps was most apparent in their applications for issuance of subpoenas for trial witnesses. These applications also prompted this Court's concern about the preparedness of defense counsel for the trial. After receiving a second application for subpoenas (Doc. 178),[1] which sought to have subpoenas issued to compel 47 potential witnesses for the defense to be available on the first morning of trial, this Court entered an Ex Parte Order on November 3, 2010, which stated:

---

[1] Applications for subpoenas from a criminal defendant are filed ex parte for the Court to consider. This Court grants or denies such a motion in an ex parte order. Although some of the orders quoted herein were filed ex parte, the reasons for their ex parte nature no longer exist now that the trial of the case has occurred. Thus, to the extent those orders pertain to the issue of effective assistance of counsel, this Court will discuss those ex parte filings and orders.

6

Defendant Thomas William Frederick has filed his Second Application and Order Compelling Issuance of Subpoenas (Doc. 175), seeking to have this Court issue subpoenas to compel 47 individuals to be available as witnesses for the defense on November 29, 2010, at 10:00 a.m. in Pierre. Although jury selection is set for November 23, 2010, opening statements and testimony is set to begin on November 29, 2010, at 9:00 a.m. Thus, the defense seeks to have the Court compel 47 people to be available one hour after the start of opening statements as prospective defense witnesses.

Defendant is charged with sexual abuse of two female minors in South Dakota. The Government has made known that it anticipates perhaps three days for its case-in-chief, depending on the length of cross-examination and how the evidence comes in.

The fact that the defense wants 47 witnesses subpoenaed for the second hour of trial demonstrates to the Court that the defense has not given serious thought to how the trial will progress. There is no conceivable chance that the Defendant will be putting on the defense case one hour after the start of the trial, that 47 witnesses will be required at that time, or that in any realistic sense there are 47 people who are competent witnesses to give relevant and admissible testimony about any matter at issue in this case.

Under Rule 17(b) of the Federal Rules of Criminal Procedure, this Court must issue a subpoena for a named witness for the Defendant "if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense." As recently as October 27, 2010, this Court in its sealed Order on Ex Parte Motion for Investigator (Doc. 174), responding to Defendant's suggestion about some proposed out-of-state witness, indicated that the defense should provide some explanation of how and whether testimony about one of the victims allegedly having made a claim of sexual abuse previously could be admissible under Rule 404, 405, 412, and 608 of the Federal Rules of Evidence. This Court already has ruled in the Order on Motions in Limine (Doc. 155 at ¶ 11) restricting character evidence regarding the victims. Again, Rule 17(b) requires not only indigency, but also "the necessity of the witness's presence for an adequate defense."

The Court plans to grant a defense motion to allow issuance of subpoenas for necessary defense witnesses in this case. Ordinarily, the Court grants these motions reliant on experienced defense counsel to make informed judgments about what defense witnesses are needed. Defendant's court-appointed counsel, as he demonstrated at the pretrial conference and motions hearing, is both experienced and very capable. However, both common sense and experience in trying sexual abuse cases drive this Court to require more here, because requesting 47 defense witnesses in a case of this nature all to be subpoenaed for a time well before any defense witness would be able to testify reveals a lack of careful thought by the defense as to how realistically this trial will proceed and how the rules of evidence affect what the defense wants to do. The defense is encouraged to be mindful that the Court intends to apply the Federal Rules of Evidence equally to the Government and the defense

7

and not allow the trial to devolve into some circus of calling multiple witnesses who have nothing to offer to anything at issue in the case or whose testimony would be cumulative, irrelevant, or hearsay. Therefore, it is

ORDERED that the defense submit ex parte to the Court, consistent with Rule 17(b) of the Federal Rules of Criminal Procedure, a statement of who each defense witness is, what the witness is expected to testify about, and when realistically the witness is expected to testify as a part of the defense case. It is further

ORDERED that ruling on the Second Application and Order Compelling Issuance of Subpoenas is reserved until Defendant files his ex parte pleading required by this Order.

(Doc. 178).

Defense counsel, instead of responding promptly to this Order, continued to file motions seeking to subpoena more and more witnesses for the second hour of the trial. The defense attorneys filed additional applications for trial subpoenas increasing the number of defense witnesses to be subpoenaed to 73. These additional applications for witness subpoenas and lack of response to the Court's Order increased this Court's concern about the preparedness of the defense attorneys for trial. This Court, therefore, questioned for a second time whether Frederick was receiving effective assistance of counsel under the Sixth Amendment of the United States Constitution. This Court entered an Order on November 10, 2010, which is set forth in full below:

Defendant is entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution. This Court is charged with ensuring the proper administration of justice. Despite being represented by two capable and experienced defense counsel, Defendant for reasons not fully apparent to the Court, may not be receiving effective assistance of counsel. Defense counsel appear to be either ignoring or openly flouting a Court order. Defense counsel conduct may jeopardize the proper administration of justice in this case as well.

On November 3, 2010, the Court entered an Ex Parte Order on Second Application for Subpoenas (Doc. 178), which stated:

[The Court quoted the entirety of the November 3, 2010 Order (Doc. 178) above.]

Rather than complying with the Ex Parte Order on Second Application for Subpoenas, defense counsel on November 9, 2010, filed a Third Ex Parte Application (Doc. 181) for subpoenas adding 22 more people to be subpoenaed for the second hour of the trial, a Fourth Ex Parte Application (Doc. 185) for subpoenas adding one

8

more witness to be subpoenaed for the second hour of trial, and an Additional Application (Doc. 186) for subpoenas adding three more people to be subpoenaed for the second hour of trial.   Defendant now wants the Court to have 73 people (47+22+1+3) subpoenaed for the second hour of trial to testify as defense witnesses.

Perhaps the strategy of the defense involves attempting to annoy the Court or to goad the Court into denying all requests for subpoenas by refusing to comply with Court orders and refusing to be realistic about witnesses and trial time. Perhaps this is some strategy for an appeal to the United States Court of Appeals for the Eighth Circuit or to supply grounds for a 28 U.S.C. § 2255 petition. However, from the perspective of the Court, the ignorance or flouting of a Court order combined with the notion of 73 subpoenas for defense witnesses all for the second hour of trial, seems to signal ineffective assistance of counsel, for whatever reason, being provided to Defendant. Therefore, it is

ORDERED that defense counsel appear by telephone for an ex parte hearing with the Court on **Friday, November 12, 2010, at 1:00 p.m. Central time**, to show cause why defense counsel should not be removed and new defense counsel appointed for Defendant in order to assure Defendant receives effective assistance of counsel. Both counsel shall participate by calling [a number set by the Court for a conference call].

(Doc. 198) (bold in original).

On Friday, November 12, 2010, this Court conducted an ex parte hearing with defense counsel Whiting and Wynne participating, and with Frederick on the phone as well.[2]  During that hearing, attorney Whiting apologized for having overlooked this Court's order of November 3 and pledged to scrutinize the list of potential defense witness to provide this Court with a list of individuals who realistically could testify in the defense case.  Toward the close of the hearing, this Court asked Frederick directly whether he was satisfied with attorneys Whiting and Wynne. Frederick responded that he had "ultimate confidence" in attorneys Whiting and Wynne, and that he believed they were providing him with the "utmost perfect legal advice that [he] could get."

---

[2] Because the matter involved an ex parte motion for subpoenas and this Court's concern about the proper administration of justice and Frederick's right to effective assistance of counsel, the hearing was ex parte without the participation of the Government.  The only others involved in the hearing were the Court's official court reporter and law clerks Thomas Agnello and Thad Roche.

On Friday, November 19, 2010, the defense attorneys filed an application for subpoenas in compliance with this Court's ex parte orders cutting the number of defense witnesses from 73 down to 51 and explaining who those 51 potential witnesses were and what they knew about matters at issue. (Doc. 209). This Court ordered the issuance of 51 subpoenas on the next business day, November 22, 2010. (Doc. 213). In short, in pretrial proceedings, this Court raised an issue of ineffective assistance of counsel with regard to two matters. First, this Court raised the issue with respect to Frederick's desire to file late a motion challenging this Court's jurisdiction; that issue never materialized as the parties stipulated that the offense occurred in "Indian Country" and that Frederick was an "Indian," which are required elements for jurisdiction under 18 U.S.C. § 1153, the basis for federal jurisdiction in this case. Second, this Court raised a question about effective assistance of counsel regarding the plethora of witnesses that Frederick wanted to have subpoenaed for the second hour of witness testimony and the failure to timely respond to a Court order for information by which this Court could gauge whether all such people legitimately were witnesses; that issue also was resolved before trial, with Frederick scrutinizing the list and reducing the number of witnesses and with this Court accommodating Frederick's request for 51 subpoenas to be issued for potential defense witnesses.

## B. Trial proceedings

On November 23, 2010, this Court began jury selection for Frederick's trial. Attorney Whiting handled voir dire for Frederick. Frederick raises no issue about the performance of attorney Whiting during voir dire. After the Thanksgiving holiday, this Court resumed the trial of the case on November 29, 2010, with opening statements and trial testimony. Attorney Wynne gave the opening statement for Frederick. Frederick raises no issue with the quality of the opening statement.

10

During the trial, attorneys Whiting and Wynne provided zealous and at times possibly overzealous representation of Frederick. This Court allowed the credibility of W.F. and J.F. to be attacked on cross-examination and through testimony from defense witnesses about opinions concerning the reputation for truthfulness of W.F. and J.F. However, over strenuous and repeated objections from Frederick's attorneys, this Court did not allow testimony and mini-trials over allegedly false accusations of sexual abuse allegedly made by W.F. and J.F. against other individuals.[3] Notwithstanding this Court's rulings, attorneys Wynne and Whiting, and in particular attorney Wynne, kept intimating in questioning and statements to the jury that there were previous false allegations of sexual abuse made by W.F. and J.F.

This Court encountered other difficulties with attorney Wynne skirting Court orders. For instance, attorney Wynne had argued a defense motion in limine to prevent any evidence or mention that she was a member of the Frederick family, which motion this Court granted. (Doc. 189, Doc. 194). Attorney Wynne then started her cross-examination of J.F. not with a question, but with a comment about how much J.F. had grown since the last time attorney Wynne had seen her. (T. 148). After this Court repeatedly had ruled that it would not allow testimony about W.F. or J.F. allegedly

---

[3]  In the presence of counsel but outside the hearing of the jury the Court considered the admissibility of the allegedly false allegations made by W.F. and J.F. of sexual abuse and found that they were inadmissible under precedent from the United States Court of Appeals for the Eighth Circuit. See United States v. Tail, 459 F.3d 854, 860-61 (8th Cir. 2006) (exclusion of evidence of victim's allegedly false prior allegations of sexual abuse because of the minimal probative value of the evidence did not violate Confrontation Clause); United States v. Withorn, 204 F.3d 790, 795 (8th Cir. 2000) ("[I]mpeaching the victim's truthfulness and showing her capacity to fabricate a story 'are not recognized exceptions to Rule 412.'") (quoting United States v. White Buffalo, 84 F.3d 1052, 1054 (8th Cir. 1996)); see also United States v. Cardinal, 782 F.2d 34, 36 (6th Cir. 1986) (finding that Rule 412 prohibited the admission of victim's prior accusations of sexual abuse even though defendant argued that the evidence related to victim's credibility rather than to her prior sexual conduct).

11

having previously claimed sexual abuse perpetrated by someone other than Frederick, this Court decided to allow limited testimony from Frederick's sister, Kathleen Frederick, the mother of W.F. and J.F., about why she did not believe W.F. and J.F. This Court permitted testimony from Kathleen Frederick to refer only to "other false allegations" having prompted her to disbelieve W.F. and J.F. (T. 589, 685). This Court ruled that Kathleen Frederick could not testify about false allegations of sexual abuse however, and instructed attorney Wynne to use the break to let Kathleen Frederick know that. (T. 685). After the break, Kathleen Frederick blurted out that there had been other false allegations of sexual abuse that prompted her to disbelieve one of the girls. (T. 692). In short, attorney Wynne, in particular, and attorney Whiting to a lesser degree were able to both legitimately and illegitimately attack the credibility of W.F. and J.F.

Defense counsel called several witnesses, including Frederick. Frederick testified repeatedly that he had not sexually abused anyone. (T.857, 859, 860, 868, 913). Frederick raises no issue about the effective representation by attorneys Wynne and Whiting during the trial testimony phase of the case. Defense counsel properly made and argued a motion for judgment of acquittal. This Court denied the motion for judgment of acquittal as to Counts I, II, and IV based on the substantial evidence presented by the Government to support each element of those offenses, and struggled with whether to grant a motion for judgment of acquittal on Count III, ultimately choosing not to do so. Outside the presence of the jury, this Court settled final instructions with counsel. Frederick raises no issue about the effective representation by attorneys Wynne and Whiting during argument on the motion for judgment of acquittal or the settling of jury instructions.

12

Frederick's claim of ineffective assistance of counsel is isolated to the closing argument given by attorney Wynne. Before the trial began, this Court held a hearing on pretrial motions on November 23, 2010, and told counsel the following:

> Only one counsel for the Government, only one counsel for the Defendant will conduct voir dire, and indeed only one counsel for the Government and one counsel for the Defendant will handle [the examination or cross-examination of each of the individual] witnesses. If you want to split up closing argument, that's fine. But in terms of conducting voir dire or handling witnesses, one counsel.

(P.T. 24).[4]

This Court gave both the Government and the Defendant 50 minutes to complete their closing arguments. (T. 992). After the Government's attorney gave the initial closing argument, attorney Wynne delivered closing argument for Frederick. She thanked the jurors for their service (T. 1019), and told the jurors that if she did things wrong, to not attribute those mistakes to Frederick. (T. 1020). Attorney Wynne told the jurors to recall the evidence from that "tricky memory thing," which was an allusion to testimony that the defense's psychological expert had given about the reliability or lack of reliability of reports of sexual abuse. (T. 1021). Attorney Wynne contended that Frederick was innocent under our law. (T. 1021). She then explained reasonable doubt. (T. 1021-1022). Attorney Wynne said that she would not explain all the fancy language in the case, but would keep her closing argument short because she knew the jurors had been sitting there for a week listening "to this story." (T. 1022). Attorney Wynne said that she would go over some highlights with the witnesses and explain what the strategy was. (T. 1023).

Attorney Wynne then talked about the Frederick tiospaye as "this old house" that had stood for a hundred years on a "solid foundation," with an open door to children, including children from

---

[4] Citations to the November 23, 2010, pretrial hearing will be denoted by the letters "P.T."

troubled homes. (T. 1023). The reference to children from troubled homes alluded to the backgrounds of W.F. and J.F. as foster children and then adopted children of Kathleen Frederick. Attorney Wynne then recounted how defense witnesses had contradicted W.F. and J.F. regarding rules for riding ATVs, how Frederick was responsible to enforce the household rules, and implied that enforcing of rules could cause Frederick to be resented. (T. 1025-1026). Attorney Wynne then countered the Government's argument about "blood is thicker than water" regarding why W.F. and J.F. were not on a particular exhibit showing female members of the Frederick tiospaye. (T.1028-1029). Attorney Wynne discussed how several children, including W.F. and J.F., had special needs and that the family worked to meet those needs for children with a "very special type of background." (T. 1032). Attorney Wynne explained that the victims were children who carried scars of their past abuse with them into the Frederick home. (T. 1035).

Attorney Wynne reminded the jurors that when W.F.'s allegation of improper touching arose, the family did not seek to hide it, but Kathleen Frederick promptly brought a counselor in to the family to address the issue. (T. 1032). Attorney Wynne argued that one family member named Lorna Turgeon, who had experience as a child abuse investigator and was a mandatory reporter, was in and out of the Frederick household and had not witnessed any evidence of abuse. (T. 1033). Attorney Wynne referred to J.F. as having a vivid imagination, with a capability of taking small incidents and turning them into large things. (T. 1034). Attorney Wynne apologized for needing to call witnesses to attack J.F.'s reputation for truthfulness and veracity. (T. 1036). Attorney Wynne compared the credibility of W.F. and J.F. to that of Frederick. (T. 1034-1036).

As she reached the close in her argument, attorney Wynne passionately implored the jurors to be cautious in their deliberations because they were making a "decision that . . . affects a human

14

being and a life, but in this particular case, it affects an entire network of people." (T. 1036).

Attorney Wynne analogized lepers from Biblical times to a person confronting sexual abuse claims.

(T. 1037). Attorney Wynne argued "when you make a decision on this particular case, it will follow

that human being to death. You know, on their epitaph, it will say 'here lies Tom Frederick, a child

abuser.'" (T. 1037).

This Court observed that attorney Wynne was very emotional, particularly toward the end

of the closing argument. At a point shortly before she ended her closing argument, attorney Wynne

referred to her time running short and this Court interrupted, told attorney Wynne that she had used

less than 30 minutes, and advised that she did in fact have time remaining. (T. 1036). From this

Court's perspective, the closing argument ended somewhat abruptly, and attorney Wynne was

emotional as she took her chair at counsel table. After attorney Wynne sat down, this Court invited

rebuttal argument from the Government. The Government's counsel gave a short rebuttal argument.

Attorney Whiting was in the courtroom during closing argument and did not ask to argue or ask for

a sidebar to discuss filling the remaining time for defense closing argument. As previously noted,

this Court told counsel that they could split up closing argument. (P.T. 24).

Attorney Wynne could have made additional arguments regarding the evidence and the

testimony. There are almost always, in retrospect, a number of arguments that counsel for each side

could have made in closing argument but did not. Indeed, in this case, there were arguments that the

Government could have made, but did not make, that may have been effective. From this Court's

perspective, attorney Wynne's closing argument was less thorough and evidence-based than typical,

but much more emotional in nature than typical. Attorney Wynne maintained and conveyed that she

15

very much believed Frederick to be innocent and made no statements that would imply anything other than that Frederick was innocent.

## II. DISCUSSION

### A. Ineffective assistance of counsel

The seminal case on the claim of ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); See <u>Premo v. Moore</u>, No. 09-658, slip op. at 1 (U.S. Jan. 19, 2011) (explaining that <u>Strickland</u> "provides the standard for inadequate assistance of counsel under the Sixth Amendment."). In <u>Strickland</u>, the Supreme Court of the United States elaborated on the meaning of the Sixth Amendment right to effective assistance of counsel and its underlying purpose "to ensure a fair trial." <u>Id.</u> at 686. Under <u>Strickland</u>, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Id.</u> There are two prongs to the test in <u>Strickland</u> for ineffective assistance of counsel. This Court will address both prongs of <u>Strickland</u> separately.

### 1. Whether counsel's performance was deficient

Under the first prong of the <u>Strickland</u> test, "the defendant must show that counsel's performance was deficient." <u>Id.</u> at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> Under the first prong of <u>Strickland</u>, the question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." <u>Harrington v. Richter</u>, No. 09-587, slip op. at 15 (U.S. Jan. 19, 2011) (quoting <u>Strickland</u>, 466 U.S. at 690); <u>see also</u> <u>Worthington v. Roper</u>, No. 09-1802, slip op.

16

at 12 (8th Cir. Jan. 6, 2011) (explaining that the first prong of <u>Strickland</u> establishes "an objective standard of reasonableness.").

The Supreme Court in <u>Strickland</u> made clear that counsel's performance is to be considered in the context of "all the circumstances." <u>Id.</u> at 688. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." <u>Id.</u> at 688-89. Under <u>Strickland,</u> a court is to make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689. In doing so, the judicial scrutiny of counsel's performance is to be "highly differential." <u>Id.</u> "It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it is proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id.</u> (citing <u>Engle v. Isaac,</u> 456 U.S. 107, 133-34 (1982)). Accordingly, this Court is to decide the reasonableness of the challenged conduct "on the facts of the particular case viewed as of the time of counsel's conduct." <u>Id.</u> at 690. This Court then must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u>

Following <u>Strickland,</u> the Supreme Court in <u>Yarborough v. Gentry,</u> 540 U.S. 1 (2003), considered whether a criminal defendant's right to effective assistance of counsel had been violated through a deficient performance during closing argument. In <u>Yarborough,</u> the Supreme Court determined that the right to effective assistance of counsel indeed does extend to closing arguments.

17

Id. at 5.  Consistent with the principles in <u>Strickland</u>, the Supreme Court in <u>Yarborough</u>, after

recognizing the right to effective assistance during closing arguments, stated:

> Nonetheless, counsel has wide latitude in deciding how best to represent a client and
> deference to counsel's tactical decisions in his closing presentation is particularly
> important because of the broad range of legitimate defense strategy at that stage.

Id.  In <u>Yarborough</u>, the Supreme Court noted that there may be times when it makes sense to forgo

closing argument altogether.  Id.  The Court further explained that "judicial review of a defense

attorney's summation is therefore highly deferential."  Id.  The Court in <u>Yarborough</u> then addressed

why counsel in that case may have chosen to make some arguments and not others.  The Court

concluded that "when counsel focuses on some issues to the exclusion of others, there is a strong

presumption that he did so for tactical reasons rather than through sheer neglect."  Id. at 8.  The Court

continued:

> Moreover, even if an omission is inadvertent, relief is not automatic.  The Sixth
> Amendment guarantees reasonable competence, not perfect advocacy judged with the
> benefit of hindsight.

Id. at 8.

This Court, in a very real way, was a witness to what now is alleged to have been ineffective

assistance of counsel - the substance and delivery of the closing argument by attorney Wynne in the

jury trial recently concluded.  There were arguments available to attorney Wynne about the facts and

testimony that she did not make.  However, the thrust of the closing argument appeared to be aimed

at personalizing Frederick, explaining the cultural setting of the Frederick family, touching upon

certain evidence, conveying attorney Wynne's sentiments that Frederick was innocent, and appealing

to the emotions of the jurors about Frederick's situation.  A presentation with less emotion, focused

more on the logic and facts, might have been more persuasive to some jurors; however, attorney

Wynne opted for an emotional appeal presumably based on her strategic assessment of this particular jury. Considering the effective assistance of counsel furnished during both the pretrial and trial stages, the totality of the circumstances, and the deference under which this Court has to regard decisions of counsel about what to include in closing argument, this Court concludes that Frederick was not deprived of his Sixth Amendment right to effective assistance of counsel.

Furthermore, any shortcomings in attorney Wynne's closing argument do not amount to the sort of extreme facts present in cases where courts have found ineffective assistance of counsel. See Lawhorn v. Allen, 519 F.3d 1272, 1295-96 (11th Cir. 2008) (Defense counsel's strategic decision to forgo closing argument in capital case, which was based on mistaken belief that state could not make rebuttal argument if counsel waived closing argument, was ineffective assistance); Burdine v. Johnson, 262 F.3d 336, 340-41 (5th Cir. 2001) (finding ineffective assistance where defense counsel repeatedly slept while evidence was being introduced against defendant in capital murder trial); Stouffer v. Reynolds, 214 F.3d 1231, 1233-34 (10th Cir. 2000) (Defense counsel was ineffective where he never made opening statement, failed to impeach key witness, did not hire necessary expert witnesses, neglected to call crucial witness, and did not proffer any defense theory at closing); Osborn v. Shillinger, 861 F.2d 612, 629 (10th Cir. 1988) (defense counsel was ineffective where he completely abandoned his duty of loyalty to defendant by intentionally weakening defendant's case). Frederick's ineffective assistance claim resembles cases where defendants have attacked closing arguments that, while not perfect, were nevertheless "effective." See Parker v. Bowersox, 188 F.3d 923, 928 (8th Cir. 1999) (rejecting ineffective assistance claim where, even though defense counsel's closing argument could have been "more succinct or tightly structured," counsel nevertheless raised a number of points in his client's defense); Parker v. United

19

States, No. 4:03CV00058, 2006 WL 2597770, at *11 (E.D. Ark. Sept. 8, 2006) (finding effective assistance where defense counsel's closing pointed out weaknesses in the government's case despite the fact that the defendant "may not have liked his defense counsel's closing argument or have wished that defense counsel stated something different.").

The fact that the jury acquitted Frederick on Count III suggests that the defense closing argument was not so bad as to be ineffective assistance of counsel. See Parker 2006 WL 2597770, at *11 ("that the jury acquitted [the defendant] on one count and were unable to reach a verdict on two other counts supports the conclusion that counsel's closing argument was effective."). Thus, it appears that the "jury carefully performed its duty by not simply rendering a blanket verdict on all counts." U.S. v. Fazio, 487 F.3d 646, 656 (8th Cir. 2007).

## 2. Prejudice from alleged ineffective assistance of counsel

The second prong of Strickland requires a showing "that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. A defendant must show more than some conceivable effect on the outcome of the trial to demonstrate prejudice. Id. at 693. Rather, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. This Court is to consider the "totality of the evidence" in making such a determination. Id. at 695.

The evidence of Frederick's guilt on Count I is substantial. The victim in Count I is W.F., who was 16 years of age at the time of her testimony. She was testifying to events that occurred when she was 8 to 10 years old. (T. 57). W.F. was outside the homes at the Frederick ranch at a

time when Frederick was giving ATV rides to the children. (T. 58). It was summer, and W.F. was wearing shorts and a shirt. (T. 58). She was the last child to get an ATV ride. (T. 59). She was in the front of the ATV on a long seat, with Frederick seated behind her. (T. 59). W.F. testified that Frederick, at a point when they were out of sight of any others, reached around her, put his hand under her underwear, placed his hand into her vaginal area, and rubbed skin to skin. (T. 61-63). This made her feel "weird" and "gross." (T. 63). Frederick then asked W.F. if she wanted to "touch [his] lizard," and W.F. said no. (T. 63-64). Frederick then said, "at least you can just hold it," and W.F. refused to do so. (T. 64). Frederick then told her, "don't tell." (T. 64).

Frederick's counsel cross-examined W.F. at length about being a foster child and having other troubles and probed her credibility among other matters. Frederick's counsel raised some questions about the credibility and reliability of W.F.'s testimony through Frederick's case in chief. Frederick in his testimony denied ever sexually abusing anyone. (T. 857, 859, 860, 868, 913). Frederick, however, acknowledged giving ATV rides to the children, which contradicted testimony from other defense witnesses. (T. 914).

The Government called as a witness L.P., an adult who as a child had been in foster care at the Frederick tiospaye. L.P. did not know W.F., had never talked with W.F., and was substantially older than W.F. Independent of W.F., L.P. testified as to having been given an ATV ride by Frederick when she was about 8 years old. (T. 182-183). According to L.P., Frederick reached around from behind and rubbed her vaginal area over her shorts. (T. 187). L.P. reported this event in 1984, but at that time the claimed conduct was not proscribed in federal law because there was no "penetration." (Doc. 143-3 at 3). Although Frederick's counsel effectively attacked L.P.'s credibility on cross-examination, the event recounted by L.P., both in age, location, and manner of

21

sexual abuse, was strikingly similar to the independent testimony of W.F., a young woman who had never met L.P. nor heard of her allegation. The dilemma faced by Frederick's counsel was that there was no way to explain how, nearly two decades apart, two witnesses would describe such a similar circumstance of sexual touching by Frederick, completely independent of one another. Thus, despite attorney Wynne foregoing some arguments about the credibility of W.F. and L.P., this Court cannot say that the failure to make such arguments caused Frederick "prejudice" under the Strickland standard.

On Counts II and IV, the evidence was even more compelling against Frederick. J.F., who was 15 at the time of her testimony, was adopted by Kathleen Frederick and lived in the Frederick tiospaye before the revelation of the sexual abuse. J.F. testified that Frederick touched her on her butt more than ten times with the palm of his hand. (T. 130). J.F. testified that Frederick touched her breasts with the palm side of his hand on two occasions. (T. 132-33). J.F. recounted that Frederick sometimes drove her to and from her country school in his pickup. (T. 134). On one such occasion, Frederick stopped the pickup on the top of a hill off to the side of the gravel country road. (T. 135). This road is in a somewhat isolated part of the Rosebud Sioux Tribe Indian Reservation where there is very little traffic. Frederick lifted up the armrest and asked J.F. to scoot over, which she did. (T. 136). Frederick then asked if he could "make love" to J.F. (T. 138). J.F. declined. (T.138). Frederick then asked if he could see her breasts, reached his arm to a point where he could pull her shirt forward, and looked inside her shirt at her breasts. (T. 138-139). At the end of this incident, Frederick told J.F. not to tell anyone. (T. 139-140).

Special Agent Oscar Ramirez of the Federal Bureau of Investigation interviewed J.F. and heard her describe being sexually abused by Frederick. With the consent and cooperation of J.F.,

Agent Ramirez recorded a phone conversation between J.F. and Frederick. (T. 382). During the phone conversation, J.F. told Frederick that law enforcement had talked with her and that she was scared. (Ex. 14A at 2). Frederick initially denied doing anything of a sexual nature to J.F. and told J.F. to tell law enforcement that he had not done anything to her. (Ex. 14A at 3). J.F. on her own initiative raised the incident at the top of the hill. Frederick implored J.F. not to tell anyone about that, because, if she did, he would go to prison for the rest of his life. (Ex. 14A at 4). Frederick on more than one occasion during the phone conversation instructed J.F. not to tell anyone about the incident on the hill, lest he go to prison for the rest of his life. (Ex. 14A at 4). The recorded phone conversation included these exchanges:

J.F.:       But when you're, but when you took me when (inaudible) going to school you stopped on that hill.

Frederick:  Don't say anything about that. I asked you, that was a mistake. I'll go to jail for the rest of my life if you say anything about that.

J.F.:       They [meaning law enforcement] told me to tell the truth.

Frederick:  Hey, don't tell the truth on that one. Do you want me to go to jail for the rest of my life? My kids will never see me again, my grand (inaudible) kids never see me.

...

Frederick:  Don't say, please don't say anything about that.

J.F.:       What's gonna happen to you?

Frederick:  Huh?

J.F.:       What's gonna happen to you?

Frederick:  They'll send me to jail for the rest of my life. And we don't want that. And I'm sorry for ever putting my arm around ya like that.

Frederick:  (inaudible) girl.

Frederick:      Please don't say anything about that ... Okay? ... Okay?

At trial, Frederick admitted having made those statements, but denied having any contact of any sexual nature with J.F. or with any other child.  (T. 900-905).

Counts II, III, and IV all related to these circumstances between Frederick and J.F.  This Court, of course, has not detailed all facts or testimony.  However, based on the testimony, there was strong evidence to support the sexual contact conviction on Count II and to support the conviction on Count IV for tampering with a witness.  Perhaps, in the face of this strong evidence, attorney Wynne chose an emotional appeal over a thorough exposition of the facts as holding the best hope for Frederick for an acquittal.  See generally Yarborough, 540 U.S. at 11 ("Winning over an audience by empathy is a technique that dates back to Aristotle.") (citation omitted).

The evidence for conviction was stronger on Counts II and IV than on Count I.  However, even on Count I, this Court cannot conclude that there exists "a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also  Christenson v. Ault, 598 F.3d 990, 997 (8th Cir. 2010) ("When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice.") (citing Strickland, 466 U.S. at 700); Dye v. Clark, No. 09cv2483, 2010 WL 2635634, at *18 (S.D. Cal. June 29, 2010) (although defense counsel's closing argument was short and addressed only two of the eleven counts defendant was charged with, overwhelming evidence of guilt prohibited a finding of prejudice); Frluckaj v. Small, No. 08-01019, 2009 WL 3731850, at *13 (C.D. Cal. Nov. 6, 2009) (refusing to find prejudice where evidence of guilt was overwhelming even though defense counsel had allegedly conceded defendant's guilt on robbery charge during closing argument without

24

first consulting with defendant); United States v. Rodriguez-Santana, No. 99-1560, 2000 WL 1160453, at *3 (1st Cir. Aug. 4, 2000) (defense counsel's decision to admit existence of drug conspiracy during closing argument did not prejudice defendant where there was substantial evidence of the conspiracy.).

## B. New trial motion

Frederick filed a new trial motion under Rule 33 of the Federal Rules of Criminal Procedure, which allows a grant of a new trial "if the interest of justice so requires." This Court may grant a new trial under Rule 33 "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000) (quoting United States v. Brown, 956 F.2d 782, 786 (8th Cir. 1992)). Under Eighth Circuit precedent, the power of the court to grant a new trial should be invoked only in an exceptional case where the evidence preponderates heavily against the verdict. United States v. Starr, 533 F.3d 985, 1000 (8th Cir. 2008).

For the reasons explained above, the evidence does not weigh "heavily enough against the verdict that a miscarriage of justice may have occurred." Lacey, 219 F.3d at 783. Frederick's claim of ineffective assistance on closing argument does not prevail under either prong of the Strickland test, let alone under both. Ultimately, the jury chose to believe W.F. and J.F. and not Frederick. Under these circumstances, respect for the jury's determination of credibility serves the interest of justice.

In the alternative to his motion for a new trial under Rule 33, Frederick moved for a judgment of acquittal on Count I[5] under Rule 29 of the Federal Rules of Criminal Procedure. (Doc. 271). Under Rule 29, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When considering a motion for judgment of acquittal, the court views the evidence in the light most favorable to the Government, resolves conflicts in the Government's favor, and accepts all reasonable inferences that support the verdict. United States v. Santana, 524 F.3d 851, 853 (8th Cir. 2008) (citations omitted). Because the evidence is sufficient to sustain Frederick's conviction on Count I, his motion for a judgment of acquittal is denied.

## C. Remaining motions

Frederick has filed a motion to stay his sentencing pending this Court's decision on Defendant's Motion for New Trial. (Doc. 272). Because this Court is denying the motion for new trial, there is no need to stay or delay Frederick's sentencing.

Attorney Whiting also has filed a motion to withdraw as counsel for Frederick because he may be a witness to the claimed ineffective assistance of counsel. (Doc. 273). Of course, the basis for the allegation of ineffective assistance of counsel related to the closing argument given by attorney Wynne and not to any act or omission by attorney Whiting. The motion for new trial is based strictly on the argument of ineffective assistance of counsel in attorney Wynne's closing argument. The closing argument was transcribed, and indeed this Court observed the closing argument. The record before this Court contains all the information necessary to consider and rule

---

[5]Frederick did not seek, in his post-trial motion, judgment of acquittal on Counts II and IV. (Doc. 271).

on the motion for new trial. Accordingly, there is no need for attorney Whiting to withdraw in connection with the motion for new trial because there is no need for an evidentiary hearing or testimony from attorney Whiting on this ineffective assistance of counsel claim.

## III. CONCLUSION AND ORDER

For the reasons explained above, it is hereby

ORDERED that Defendant's Motion for New Trial Pursuant to Federal Rule of Criminal Procedure 33 and Motion for Judgment of Acquittal on Federal Rule of Criminal Procedure 29 Regarding Count I (Doc. 271) are denied. It is further

ORDERED that Defendant's Motion for Stay of Execution of Sentencing Pending the Trial Court's Decision on Defendant's Motion for New Trial (Doc. 272) is denied. It is further

ORDERED that attorney Whiting's Motion to Withdraw as Counsel for the Defendant (Doc. 273) is denied.

Dated February 9, 2011.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE